```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
___

```
DOUGLAS P. STEFFENS,
                                    Plaintiff,
        -vs-                                        No. 6:14-CV-06727 (MAT)
                                                    DECISION AND ORDER
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                                    Defendant.
```
___

## I.  Introduction

Represented by counsel, Douglas P. Steffens ("plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's motion is granted.

## II. Procedural History

The record reveals that on February 16, 2011, plaintiff (d/o/b November 6, 1988) applied for SSI, alleging disability as of February 16, 2011. After his application was denied, plaintiff requested a hearing, which was held before administrative law judge John P. Costello ("the ALJ") on July 30, 2013. The ALJ issued an

unfavorable decision on August 12, 2013. The Appeals Council denied review of that decision and this timely action followed.

**III. Summary of Evidence**

The administrative record contains sparse documentation of plaintiff's medical treatment. One pediatric treatment note from Westside Pediatrics indicates that plaintiff came into that office in July 2011 for a tuberculosis test required "for work or school." T. 342. Additionally, an entry from Westside Pediatric stated that he had not treated there since 2006, but noted that before 2006 "he had pervasive development disorder and encopresis [a disorder wherein an individual resists bowel movements]." T. 302.

The record also contains some vocational documentation. In October 2010, plaintiff met with Wendy Ford at VESID (Office of Vocational and Educational Services) in Rochester. Ms. Ford noted that "ha[d] been coming to job development meetings smelling of feces," and that he had demonstrated issues with halitosis and body odor. T. 341. Ms. Ford recorded that plaintiff "defecate[d] in his pants and then his Grandmother [would] clean[] it up." Id. Plaintiff acknowledged these issues but would not commit to improvement. In May 2011, it was noted that plaintiff was placed in a cleaning job after having been terminated from two prior assignments. In one assignment, "[t]oo much multi-tasking and work speed [were] required," and in another, "there were too many smells from the kitchen and new carpeting that [plaintiff] could not

handle." T. 332. Nevertheless, plaintiff's referring sources felt that plaintiff was "highly employable." Id. Later that month, plaintiff requested additional hours, which were approved. However, it was noted that "if [plaintiff began] to revert back to previous hygiene issues the team should reconsider his basic readiness for competitive employment." T. 331. In July 2011, it was noted that plaintiff continued to have difficulty with job development, refusing to use public restrooms and demonstrating difficulty being in public places. In August 2011, VESID noted that "community based work [was] not feasible," and plaintiff was instead placed in enclave work as a cleaner. It was noted that "[a]dditional coaching hours [were] required . . . to assist [plaintiff] with communicating with his supervisor appropriately and developing work stamina." T. 328.

The record contains three consulting medical opinions. In December 2009, plaintiff was examined by Peter K. MacKenzie, Ph.D., on reference from VESID. Plaintiff reported that he had experienced developmental delays in toileting skills and that he "continue[d] to have issues in this area." T. 286. A review of plaintiff's educational records revealed that during school he received special education assistance, and he generally got good grades although "his interpersonal awareness and social skills were poor resulting in his having few friends." T. 287. Plaintiff completed one semester of college but was unable to continue due to an inability

3

to "meet the demands associated with college (GPA 1.8)." Id. Plaintiff presented as socially awkward, talking to himself while completing tasks and at one point "[breaking] into song for no apparent reason." T. 288.

On examination of intellectual functioning, plaintiff tested above average. On assessment of attention and concentration, plaintiff tested within normal limits but reported a short attention span, which Dr. MacKenzie opined was "an artifact of his emotional status rather than a biologically based attentional disorder." T. 290. Regarding plaintiff's adaptive behavioral functioning, Dr. MacKenzie opined that plaintiff's "ability to care for himself, interact with others and manage[] himself within the community [were] marginal and clearly well below expectations given his intellectual abilities." T. 291. In Dr. MacKenzie's opinion, "adaptive behavioral deficits and emotional factors associated with Asperger's Disorder and depression appear[ed] to be the greatest barriers to [plaintiff] being successful." T. 293. Dr. MacKenzie suggested that plaintiff "would be best suited for a job that [was] routine and predictable in nature." T. 293.

In May 2011, Margery Baittle, Ph.D. completed a consulting examination on behalf of the state agency. Plaintiff reported being employed as a cleaner for ten hours per week, which job he had begun that month. Plaintiff reported trouble sleeping, depressive symptomatology, difficulty concentrating, fatigue, and social

withdrawal. He did not report any issues associated with encopresis. In terms of activities of daily living ("ADLs"), plaintiff reported helping his grandmother with cleaning and shopping. He stated that he had no friends. He liked to play chess and work on puzzles, and spent his days "playing games, going to his work, watching TV, and listening to the radio." T. 308. He demonstrated receptive language deficits, in that he often asked Dr. Baittle to repeat what she had said and did not logically follow.

On mental status examination ("MSE"), plaintiff's affect was somewhat dysphoric; attention and concentration were intact; recent and remote memory skills were intact; and cognitive functioning was above average. In Dr. Baittle's opinion, plaintiff could "follow and understand simple and more complex directions, maintain attention and concentration in [the] one-to-one [setting], seem[ed] to keep a regular schedule, [could] learn new tasks sometimes, seem[ed] to make appropriate decisions, relate[d] adequately in [the] interview, but apparently poorly with others." T. 308. Dr. Baittle also opined that he had "some difficulty with stress." Id.

Non-examining consultant Dr. G. Kleinerman completed a psychiatric review technique and mental residual functional capacity ("RFC") in June 2011. Dr. Kleinerman found that plaintiff suffered from Asperger's syndrome, and opined that he had mild

limitations in ADLs, moderate difficulties in maintaining social functioning, and moderate difficulties maintaining attention, concentration, persistence, or pace. Plaintiff had no repeated episodes of decompensation of extended duration. Dr. Kleinerman also found that plaintiff was moderately limited in: maintaining attention and concentration for extended periods; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; and setting realistic goals or making plans independently of others. According to Dr. Kleinerman, plaintiff retained the RFC "to do low demand work without frequent social interaction." T. 326.

**IV.  The ALJ's Decision**

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since February 16, 2011, the application date. At step two, the ALJ found that plaintiff suffered from the following severe impairments: pervasive developmental delay, Asperger's syndrome, and dysthymic disorder. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. In assessing

plaintiff's mental functioning, the ALJ found that plaintiff had mild limitations in ADLs, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace.

Before proceeding to step four, the ALJ determined that plaintiff retained the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: he should avoid concentrated exposure to odors, fumes, and extreme temperatures and humidity; he was limited to work involving simple tasks; and he should have no more than occasional interaction with coworkers and the general public. After finding that plaintiff had no past relevant work, the ALJ determined that, considering plaintiff's age, work experience, and RFC, jobs existed in significant numbers in the national economy that plaintiff could perform. The ALJ thus found that plaintiff was not disabled.

**V.   Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

**A.     RFC and Step Five Finding (Plaintiff's Points 1 and 3)**

Plaintiff contends that the ALJ's RFC finding is unsupported by substantial evidence, and therefore the hypothetical question on which the VE relied was not properly reflective of plaintiff's RFC. Specifically, plaintiff argues that the RFC finding (1) failed to account for plaintiff's encopresis; (2) failed to account for attention and concentration limitations by merely restricting plaintiff to simple work; and (3) failed to account for plaintiff's difficulties in handling stress. For the reasons that follow, the Court finds that the RFC determination was supported by substantial evidence.

As plaintiff points out, Dr. MacKenzie's evaluation noted symptoms associated with plaintiff's encopresis. However, although Dr. MacKenzie stated that "[t]oileting issues should . . . be addressed," Dr. MacKenzie's summary of plaintiff's functioning did not focus on encopresis, instead relying primarily on Dr. MacKenzie's opinion that plaintiff had generalized adaptive behavioral deficits. T. 292-93. Additionally, as the Commissioner points out, Dr. MacKenzie's evaluation was completed in January 2010, prior to the relevant time frame here.

Moreover, although plaintiff argues that it was error for the ALJ to fail to specifically ascribe weight to this opinion, the ALJ's decision did summarize the opinion and it is therefore apparent that it was considered. The ALJ did not err in failing to

specifically state the weight given to this opinion, see, e.g., Zaidel v. Colvin, 2015 WL 4716040, *6 (W.D.N.Y. Aug. 7, 2015), and, in any event, the opinion does not heavily emphasize plaintiff's encopresis symptoms as plaintiff argues.

Although plaintiff's reply (Doc. 14) contends that "there is no medical evidence presented to demonstrate that Plaintiff's encopresis-related limitations resolved themselves," there is similarly no medical evidence that the issues continued.[1] Rather, the record contains only a few sparse notes from VESID indicating that these concerns were ongoing, but as of the most recent note in August 2011, plaintiff had been placed in a job position in which he was expected to stabilize. Documentation from plaintiff's pediatrician also indicated that, although that office treated him in 2011 for a tuberculosis test, he had not treated there for encopresis since 2006. Finally, the opinions of Drs. Baittle and Kleinerman did not note any limitations associated with encopresis. The ALJ was entitled to rely on these consulting opinions as substantial evidence. See Lauber v. Colvin, WL 4600356, *5 (W.D.N.Y. July 29, 2015) (noting that "the Second Circuit . . . has found that a consultative examiner's opinion can constitute

---

[1] The Court notes here that it is the plaintiff's burden to provide medical evidence. See Long v. Bowen, 1989 WL 83379, *4 (E.D.N.Y. July 17, 1989) ("Even though the ALJ has an affirmative obligation to develop the record, it is the plaintiff's burden to furnish such medical and other evidence of disability as the Secretary may require.") (internal citations omitted).

substantial evidence in support of an ALJ's RFC assessment") (citing Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995)); see generally 20 C.F.R. § 416.927(e)(2)(i).

Plaintiff next contends that the RFC assessment failed to properly account for limitations plaintiff had in attention and concentration. "[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work *despite limitations* in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." Rodriguez v. Colvin, 2014 WL 3882191, *17 (W.D.N.Y. Aug. 7, 2014) (quoting Marquez v. Colvin, 2013 WL 5568718, *17 (S.D.N.Y. Oct. 9, 2013); Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)); see also McIntyre v. Colvin, 2013 WL 2237828, *4 (N.D.N.Y. May 21, 2013) (same). Here, Dr. Baittle concluded that plaintiff could follow and understand simple and more complex directions, that he could maintain attention and concentration in a one-on-one setting, and that he could keep a regular schedule. Dr. Kleinerman similarly found that plaintiff could perform simple, routine work despite moderate limitations in attention and concentration. Additionally, Dr. MacKenzie's test of plaintiff's attention revealed results within normal limits, and Dr. MacKenzie opined that plaintiff would be able to perform a "routine and predictable" job. T. 293. The Court thus finds that substantial

record evidence supported the ALJ's RFC finding limiting plaintiff to work involving simple tasks.

Plaintiff points to decisions from other circuits indicating that moderate difficulties in attention and concentration are not properly accounted for by an RFC finding restricting a plaintiff to unskilled or simple work. Doc. 10-1 (citing, among others, Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015) ) ("[T]he ability to perform simple tasks differs from the ability to *stay on task*. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace.") (emphasis added). In this case, however, Dr. Baittle's finding specifically noted that, *despite deficits in attention and concentration*, plaintiff could perform simple (and even complex) tasks, could maintain attention and concentration in a one-on-one setting (i.e., he could stay on task), and could maintain a regular schedule. Dr. Kleinerman also found that plaintiff could perform simple work despite moderate limitations in attention and concentration. Therefore, this case is distinguishable from those to which plaintiff cites.

Finally, plaintiff contends that the RFC finding did not adequately account for plaintiff's issues handling stress. The only medical source who directly addressed "stress" was Dr. Baittle, who stated that she believed that plaintiff had "some difficulty with stress." T. 308. All of the medical sources - Drs. MacKenzie, Baittle, and Kleinerman – essentially opined that plaintiff could

perform work in a one-on-one, routine setting with low public contact. Additionally, the notes from VESID indicate that even though plaintiff experienced problems being placed in a work setting, his referring source maintained a belief that he was "highly employable." T. 332.

In this case, the RFC finding requiring low contact with coworkers and the public adequately accounted for plaintiff's stress. See, e.g., Amrock v. Colvin, 2014 WL 1293452, *7 (N.D.N.Y. Mar. 31, 2014) (RFC finding was proper where plaintiff's stress associated with bipolar disorder was accounted for by restriction to "simple, routine, low stress tasks with brief, superficial contact with coworkers and the public"); Kotasek v. Comm'r of Soc. Sec., 2009 WL 1584658, *13 (June 3, 2009) (ALJ's RFC finding, which limited contact with other individuals, was supported by substantial evidence where medical opinions indicated that plaintiff had stress stemming from social phobias). In addition to the medical opinions, this finding was supported by other substantial evidence in the record, which, notably, contained no documentation of mental health treatment, and indicated that placement with VESID was at least provisionally successful upon plaintiff's beginning a job as a cleaner in an enclave setting.

As noted above, plaintiff contends that the ALJ's step five finding was erroneous because substantial evidence did not support the hypothetical questions posed to the VE. In light of the Court's

finding that the ALJ properly formulated plaintiff's RFC, the Court correspondingly finds that the ALJ's questions to the vocational expert ("VE"), which were based on the RFC finding described above, were supported by substantial evidence.

**B.     Credibility (Plaintiff's Point 2)**

Plaintiff contends that the ALJ erroneously evaluated his credibility. The ALJ's discussion, which incorporates his review of the testimony, indicates that the ALJ used the proper standard in assessing credibility, especially in light of the fact that the ALJ cited relevant authorities in that regard. See Britt v. Astrue, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96-7p as evidence that the ALJ used the proper legal standard in assessing the claimant's credibility). Although plaintiff argues that the ALJ's credibility assessment was merely formulaic, it is apparent from the ALJ's decision that he properly considered plaintiff's testimony and considered it in conjunction with the record as a whole, which, notably, was devoid of medical treatment notes relevant to plaintiff's primary physical or psychological issues. See, e.g., Diakogiannis v. Astrue, 975 F. Supp. 2d 299, 319 (W.D.N.Y. 2013) (noting that, despite boilerplate language, ALJ's decision indicated that he considered plaintiff's credibility "in the context of a comprehensive review of the entire medical record").

**VI.  Conclusion**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Doc. 10) is denied and the Commissioner's motion (Doc. 12) is granted. The ALJ's finding that plaintiff was not disabled is supported by substantial evidence in the record, and accordingly, the Complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                      **S/Michael A. Telesca**
                                       HON. MICHAEL A. TELESCA
                                      United States District Judge

Dated:    December 16, 2015
          Rochester, New York.